IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| TODD HAROLD COOPER,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>    Defendant. | **MEMORANDUM DECISION AND ORDER DENYING PETITIONER'S MOTIONS TO VACATE, SET ASIDE, OR CORRECT A SENTENCE UNDER 28 U.S.C. § 2255**<br><br><br>Case No. 1:16-cv-00088-JNP<br><br>District Judge Jill N. Parrish |

   Before the court are Petitioner Todd Harold Cooper's ("Cooper") Motion to Correct Sentence under 28 U.S.C. § 2255 [ECF No. 1], Supplemental Motion to Vacate and Set Aside a Sentence under 28 U.S.C. § 2255(h)(1) [ECF No. 46-1], and Supplemental Motion to Vacate and Set Aside a Sentence Under 28 U.S.C. § 2255(h)(2) [ECF No. 46-2].[1] In essence, Cooper argues that his mandatory life sentence under the federal three-strikes law violates the Constitution. For the reasons set forth below, the court DENIES Cooper's § 2255 motions.

---

[1] Cooper has filed several iterations of his motions in this case. Per the court's order at ECF No. 48, the court treats ECF Nos. 1, 46-1, and 46-2 as the operative motions. ECF No. 1 is the initial motion filed by Cooper's then-counsel. ECF Nos. 46-1 and 46-2 are the 2255(h)(1) and 2255(h)(2) motions, respectively, composed by Cooper. Cooper also submitted several iterations of his reply brief. The court treats ECF No. 81 as the operative iteration.

# BACKGROUND

## I. FEDERAL THREE-STRIKES LAW

Cooper grounds his motions in his assertion that the sentencing judge erroneously sentenced him to a mandatory life sentence under the federal three-strikes law. The federal three-strikes law, codified at 18 U.S.C. § 3559(c), "is a recidivist statute" that "enhances the sentence of a defendant who is convicted of a serious violent felony when the defendant previously was convicted of at least two other serious violent felonies." *United States v. Kaluna*, 192 F.3d 1188, 1195 (9th Cir. 1999). Specifically, the enhanced penalty provision provides:

> (1) Mandatory life imprisonment.—Notwithstanding any other provision of law, a person who is convicted in a court of the United States of a serious violent felony shall be sentenced to life imprisonment if—
> > (A) the person has been convicted (and those convictions have become final) on separate prior occasions in a court of the United States or of a State of—
> > > (i) 2 or more serious violent felonies; or
> > > (ii) one or more serious violent felonies and one or more serious drug offenses; and
> > (B) each serious violent felony and serious drug offense used as a basis for sentencing under this subsection, other than the first, was committed after the defendant's conviction of the preceding serious violent felony or serious drug offense.

18 U.S.C. § 3559(c).

The law sets forth three categories of offenses that count as a "serious violent felony," and thus, a strike. First, the "enumerated clause" lists a series of enumerated offenses that qualify as serious violent felonies. *See* 18 U.S.C. § 3559(c)(2)(F)(i). The list of enumerated serious violent felonies includes any "Federal or State offense, by whatever designation and wherever committed, consisting of . . . robbery (as described in section 2111, 2113, or 2118)." *See id.* Sections 2111, 2113, and 2118 each describe robbery as the taking or attempting to take something of value from the person or presence of another, by force and violence or by intimidation. 18 U.S.C. §§ 2111

(robbery within federal territorial jurisdiction), 2113 (bank robbery), 2118 (robbery involving controlled substances). Second, the "elements clause" designates as a serious violent felony "any other offense punishable by a maximum term of imprisonment of 10 years or more that has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 3559(c)(2)(F)(ii). Third, the "residual clause" identifies as a serious violent felony "any offense punishable by a maximum term of imprisonment of 10 years or more . . . that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." *Id.* Accordingly, a sentencing judge could find that a particular offense qualifies as a serious violent felony under the enumerated clause, the elements clause, or the residual clause.

However, the Supreme Court's decisions in *Johnson v. United States*, 576 U.S. 591 (2015), *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), and *United States v. Davis*, 139 S. Ct. 2319 (2019) called the constitutionally of the residual clause into question. In each of those cases, the Supreme Court held statutory language that is similar to the language in § 3559's residual clause void for vagueness. *See Johnson*, 576 U.S. at 597-602 (holding the residual clause of the Armed Career Criminal Act unconstitutionally vague); *Dimaya*, 138 S. Ct. at 1223 (holding the residual clause of the definition of "crime of violence" in 18 U.S.C. § 16(b) unconstitutionally vague); *Davis*, 138 S. Ct. at 2336 (holding the residual clause at 18 U.S.C. § 924(c)(3)(B) unconstitutionally vague). Given the substantial similarities between the residual clauses already held unconstitutional by the Supreme Court and the § 3559 residual clause, courts across the country have found § 3559's residual clause unconstitutionally vague. *See United States v. Bell*, No. 22-5111, 2023 WL 2583384, at *4 (10th Cir. Mar. 21, 2023) ("We can rely, though, on *Johnson* and *Davis* to support a conclusion on direct appeal that the residual clause of similarly worded statutes are

unconstitutionally vague . . . ."); *Langford v. United States*, No. 4:16-cv-00132-RGE, 2019 WL 12025155, at *3 (S.D. Iowa Sept. 30, 2019) (comparing the residual clause language in *Johnson*, *Dimaya*, and *Davis* to the § 3559 residual clause and holding that "this Court finds the nearly identical language contained in § 3559 is also unconstitutionally vague"); *United States v. Minjarez*, 374 F. Supp. 3d 977, 992-93 (E.D. Cal. 2019) (holding the § 3559 residual clause unconstitutional because it "possesses the exact same two features that rendered the residual clauses in [*Johnson* and *Dimaya*] void for vagueness" (citation omitted)); *United States v. Goodridge*, 392 F. Supp. 3d 159, 173 (D. Mass. 2019) (holding the § 3559 residual clause "unconstitutionally vague in accordance with *Johnson* and *Dimaya*"). Indeed, the government concedes that "the portion of the definition beginning with 'or that, by its nature' [i.e., the residual clause] is no longer valid." ECF No. 53, at 12.

To summarize, the government can seek a mandatory life sentence under the federal three-strikes law if an offender is convicted of an offense qualifying as a strike and the offender already has two previous outstanding strikes. An offense counts as a strike for purposes of the federal three-strikes law only if it qualifies as a serious violent felony under the enumerated clause or the elements clause. To the extent that a sentencing judge adjudicated an offense as a serious violent felony—or strike—under the residual clause, the sentence suffers from a constitutional defect.

Finally, prior to a trial or plea where the government seeks an enhanced sentence under the federal three-strikes law, the government must serve a copy of the prior convictions upon which the government bases the sentencing enhancement on the court and counsel for the defendant. *See* 21 U.S.C. § 851(a)(1) (incorporated by 18 U.S.C. § 3559(c)(4)). This document is called an information or a notice of sentencing enhancement ("Notice"). "Clerical mistakes in the information may be amended at any time prior to the pronouncement of sentence." *Id.*

## II.    FIRST TWO STRIKES

The government sought an enhanced sentence under the federal three-strikes law in the underlying case (Case No. 1:00-cr-00051) because of the prior strikes on Cooper's record. Before the trial, the government filed a Notice, indicating that it intended to seek a mandatory life sentence for Cooper under 18 U.S.C. § 3559. The Notice listed the following offenses as potential qualifying strikes:

1. 1981: Robbery (80520), State of California, County of Santa Cruz ["offense (1)"];
   Burglary of a Dwelling (2nd degree felony) in Third Judicial District Court, Salt Lake County, Utah (Case # 24605). Judgment & Commitment filed on or about June 18, 1973[2]
2. 1982: Burglary in the first degree (82-0066 – State of Oregon, County of Washington) ["offense (2)"]
3. 1982: Burglary in the first degree (82-0169 – State of Oregon, County of Washington) ["offense (3)"]
4. 1988: Armed bank robbery (CR88-99T [116] – Western District of Washington);
   Armed bank robbery (CR88-306 – United States District Court, District of Oregon, Rule 20 transfer to Western District of Washington and sentenced with CR88-99T) [collectively, "offense (4)]
5. 1990: Robbery (C890126CR – State of Oregon, Washington County) ["offense (5)"]

ECF No. 46-1, at 28. While the government's Notice did not specifically clarify which of the above convictions constituted Cooper's first two strikes, the government clearly stated that either the conviction for armed bank robbery in the District of Utah or the conviction for use of a firearm during a crime of violence in the District of Utah could serve as a third strike. In response to

---

[2] As discussed further below, the government listed two separate offenses under number one. The government indicated in its response to Cooper's objection to sentencing enhancement that the Utah burglary was included in error and requested that it be stricken prior to Cooper's sentencing. ECF No. 274, at 5 n.1. Cooper concurs that this court should not consider the Utah burglary for purposes of evaluating his liability under the federal-three strikes law. Indeed, Cooper points out several times that he has no criminal case record at the Utah Third District Court. *See, e.g.*, ECF No. 46-1, at 29. Therefore "offense (1)" includes only the California robbery.

Cooper's present motion, the government identifies offenses (1), (4), and the underlying District of Utah bank robbery conviction as the relevant three strikes. To that end, the court provides additional background on offenses (1) and (4), then describes the events leading to the third strike—the strike that gave rise to Cooper's mandatory life sentence.

Offense (1) is a California robbery conviction that stems from an incident in Santa Cruz, California in October 1981. Cooper and a co-defendant broke into a home. The resident returned during the course of the crime. Cooper and his partner tied the resident up and Cooper threatened the resident with a hunting knife. While Cooper expressed a desire to kill the resident, his partner talked him out of it. The pair left with $6,500 from the home. Cooper was convicted under California Penal Code § 211 and received a three-year prison term. A California court later denied probation. As one of the grounds for the probation denial, the court cited California Rule of Court 414(c)(3), which states that one of the "[c]riteria affecting the decision to grant or deny probation [is] [w]hether the defendant was armed with or used a weapon." ECF No. 53-3, at 3.

Offense (4) encompasses several robberies prosecuted in federal court. On September 28, 1988, Cooper robbed a bank in Portland, Oregon. He immediately proceeded to attempt to rob a bank in Vancouver, Washington, then successfully robbed a different bank also located in Vancouver, Washington. Although Cooper's activities spanned state lines, the case was consolidated into the Western District of Washington, which presided over the case as to both counts of bank robbery. Cooper's conduct led to two federal convictions for bank robbery, resulting in a 125-month prison sentence. As discussed below, the two convictions count as a single strike for purposes of the federal three-strikes law.

## III.    THIRD STRIKE AND COLLATERAL ATTACKS

Cooper's third strike resulted from a bank robbery that occurred in Utah. On July 17, 2000, Cooper robbed a bank at gunpoint. During the course of the robbery, he threatened to shoot bank employees and customers. Police subsequently apprehended Cooper and the government brought charges against him. Cooper proceeded to trial. On October 28, 2002 a jury in the District of Utah convicted Cooper of one count of armed bank robbery in violation of 18 U.S.C. § 2113(a) and (d) and one count of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c).

The case then entered the sentencing phase. Cooper objected to an enhanced sentence under the federal three-strikes law on the grounds that the government had not established that Cooper was the person convicted of the predicate offenses. Specifically, Cooper contended that by neglecting to produce prison packets containing fingerprints or DNA from the alleged prior convictions, the government had failed to meet its burden. *See* Case No. 1:00-cr-00051, ECF No. 271, at 1-2. However, at the sentencing hearing the sentencing judge overruled this objection on the grounds that Cooper had stated that there were "no material errors" in the presentence report ("PSR"), and "no corrections or additions which the defendant wishes to make to the Pre-Sentence Investigation prior to the Time of Sentencing." ECF No. 271, at 1. The judge further considered the fact that Cooper's counsel admitted that he had no evidence to suggest that the convictions were anything other than Cooper's. ECF No. 53-2, at 9-10.

On January 21, 2003, the Court sentenced Cooper to life in prison on the bank robbery charge and eighty-four months in prison on the firearm charge, to run consecutively. The court subsequently entered judgment against Cooper.

Cooper appealed the conviction to the Tenth Circuit. Cooper argued that the jury had insufficient evidence to convict him, that the court had erroneously instructed the jury that he could

be found guilty of aiding and abetting, that he was improperly denied access to a law library, and that the court erred by sentencing him under the federal three-strikes law. On July 19, 2004, the Tenth Circuit affirmed his conviction. Several months later, the Supreme Court denied Cooper's petition for a writ of certiorari.

Subsequently, Cooper pursued several collateral attacks on his Utah bank robbery conviction. Cooper's first collateral attack began on November 18, 2005. Cooper filed a motion to vacate his sentence under 28 U.S.C. § 2255 arguing that he had received ineffective assistance of counsel and that his sentence violated the statutory maximum, was incorrect under the guidelines, and violated his Fifth and Sixth Amendment rights. The court denied Cooper's motion. *See Cooper v. United States*, 1:05-cv-142 (D. Utah Mar. 28, 2006) (unpublished order at ECF No. 11).

Cooper appealed the court's denial, but the Tenth Circuit declined to issue a certificate of appealability on the grounds that the district court's resolution of Cooper's § 2255 motion was not subject to debate. *See United States v. Cooper*, No. 06-4094 (D. Utah Jan. 11, 2007) (unpublished order).

Cooper's second collateral attack began on June 27, 2016. Through counsel, Cooper requested that the Tenth Circuit authorize a successive § 2255 motion based upon the recently decided Supreme Court case, *Johnson v. United States*, 576 U.S. 591 (2015).

The Tenth Circuit acquiesced,[3] and Cooper filed a motion through counsel arguing that the state robbery and burglary offenses were not serious violent felonies in light of *Johnson*, thus

---

[3] The court notes that the Tenth Circuit's permission to file the present successive § 2255 motion does not bear on whether the Tenth Circuit approves of the motion. To obtain authorization from the Tenth Circuit, Cooper had only to make a prima facie showing that his second or successive § 2255 motion meets the gatekeeping requirements of § 2255(h). *See* 28 U.S.C. § 2244(b)(3)(C); *see also United States v. Murphy*, 887 F.3d 1064, 1067 (10th Cir. 2018). As the Tenth Circuit stated in this case, "[i]n assessing this showing, we do not consider the merits of the second or successive motion." *See* ECF No. 81, at 49 (citing *In re Barrett*, 840 F.3d 1223, 1227 (10th Cir.

precluding application of the federal three-strikes law to his case. *See* ECF No. 1. Soon thereafter, Cooper's counsel withdrew at his request. Cooper filed several motions for extensions of time while he searched for counsel. Ultimately, Cooper filed two supplemental § 2255 motions pro se. *See* ECF Nos. 46-1, 46-2. The government responded to all of Cooper's § 2255 motions in a single filing. *See* ECF No. 53. Cooper filed two replies. *See* ECF Nos. 59, 81. Because Cooper filed his initial reply while on lockdown for COVID-19 and requested leave to amend his reply upon the termination of his lockdown, the court treats Cooper's final reply brief (ECF No. 81) as the operative reply.

## LEGAL STANDARD

Under 28 U.S.C. § 2255, a prisoner may "move the court which imposed the sentence to vacate, set aside, or correct the sentence" where "the court finds that the judgment was rendered without jurisdiction, or that the sentence imposed was not authorized by law or otherwise open to collateral attack, or that there has been such a denial or infringement of the constitutional rights of the prisoner as to render the judgment vulnerable to collateral attack." 28 U.S.C. § 2255(a)-(b). In essence, the court looks for "a fundamental defect which inherently results in a complete miscarriage of justice. *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (citation omitted). In reviewing a § 2255 motion, the court presumes that the prior proceedings were lawful. *See Klein v. United States*, 880 F.2d 250, 253 (10th Cir. 1989). The movant bears the burden of demonstrating the deprivation of a constitutional right. *See United States v. Kennedy*, 225 F.3d 1187, 1196 n.6 (10th Cir. 2000).

---

2016). This court, in contrast, is tasked with considering the merits of Cooper's § 2255 motion. Therefore, to the extent Cooper suggests that he has "proven" something to the Tenth Circuit, what he has "proven" does not affect the merits of his § 2255 petition. ECF No. 81, at 17.

A court must conduct a hearing on a § 2255 motion "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b). "The purpose of an evidentiary hearing is to resolve conflicting evidence." *Anderson v. Att'y Gen. of Kan.*, 425 F.3d 853, 860 (10th Cir. 2005). But when the evidence allows the court to resolve the § 2255 motion on the existing record, no evidentiary hearing is required. *United States v. Lopez*, 100 F.3d 113, 121 (10th Cir. 1996). If the claims relate to occurrences in the courtroom or record evidence, then the court need not conduct a hearing. *Machibroda v. United States*, 368 U.S. 487, 494-95 (1962).[4]

## ANALYSIS

Across three motions, Cooper advances two essential arguments for why the court should re-sentence him without applying the federal-three strikes sentence enhancement. First, he argues that *Johnson v. United States*, 576 U.S. 591 (2015), renders § 3559's residual clause unconstitutional. Thus, Cooper argues, to the extent the sentencing court relied on the residual clause in concluding that a particular offense was a strike, the court must overturn the sentence. Second, he argues that the government committed a series of reversible errors in the Notice, including (1) inaccurately stating the timing of various convictions or changing the dates of convictions to mask timing issues, (2) inaccurately representing consolidated offenses as multiple strikes, (3) including a false conviction for a burglary in Utah in which Cooper did not participate, and (4) misrepresenting offense number (4) as an armed robbery when in fact the charging documents do not support such a representation. The government responds to Cooper's arguments

---

[4] Because Cooper's claims relate to courtroom occurrences and record evidence, the court need not hold an evidentiary hearing.

and adds its own contention that Cooper does not comply with the foundational gatekeeping requirements put in place by 28 U.S.C. § 2255.[5]

The court proceeds by clarifying which of Cooper's offenses can count as strikes for purposes of the federal three-strikes law. The court then discusses whether offense (1), the California robbery, qualifies as a strike in light of recent Supreme Court decisions. Finally, the court reviews the Notice errors highlighted by Cooper. For the following reasons, the court DENIES Cooper's motion.

## I.    RELEVANT OFFENSES

As an initial matter, the court begins by clarifying which offenses are at issue here. Cooper argues, and the government concurs, that the two bank robbery convictions—offense (4) and the underlying Utah bank robbery conviction—each constitute a strike for purposes of the federal three-strikes law. *See* 18 U.S.C. § 3559(c)(2)(F)(i). The government prosecuted both offenses under 18 U.S.C. § 2113, which is an exemplar statute included in the enumerated offense list under 18 U.S.C. § 3559(c)(2)(F)(i). And both parties acknowledge that offense (4) accounts for only a single strike, despite the fact that the Notice lists two separate bank robbery convictions. *See* 18 U.S.C. § 3559(c)(1)(B) (noting that each strike must be "committed after the defendant's conviction of the preceding [strike]"). Accordingly, both parties agree that Cooper has two strikes as a result of the convictions arising from offense (4) and the underlying Utah bank robbery. The only question for the court, then, is whether any of the other offenses listed by the government in the Notice qualify as a strike. Any additional strike would bring Cooper's total number of strikes to three, which would support the sentencing judge's decision to impose a mandatory life sentence.

---

[5] Because Cooper obtained prior authorization from the Tenth Circuit, the court assesses the merits of Cooper's § 2255 claim.

The government does not contest Cooper's contention that offenses (2), (3), and (5) do not qualify as strikes. First, offenses (2) and (3), which both pertain to burglaries in Oregon, are not serious violent felonies under any valid provision[6] of the three strikes law. Burglary is not an enumerated offense. And the government "does not argue that the Oregon burglary convictions [offenses (2) and (3)] qualified under the [elements] clause at the time Cooper was sentenced." ECF No. 53, at 13 n.3. Thus, the government concedes that offenses (2) and (3) do not qualify as strikes.

Moreover, the government concedes that the timing of offense (5) precludes its use as a predicate serious violent felony. In order to qualify as a strike for purposes of the federal three-strikes law, an offense must have been "committed after the defendant's conviction of the preceding serious violent felony or serious drug offense." 18 U.S.C. § 3559(c)(1)(B). A federal court in Washington entered judgment against Cooper on February 16, 1989 for offense (4) based on his guilty plea. ECF No. 53-1, at 15-16. The government asserts that offense (4) counts as a strike. But Cooper committed offense (5) on September 17, 1988, well before his conviction for offense (4). As the government acknowledges, "[b]ecause of the timing requirement in § 3559(c)(1)(B), the use of a federal bank robbery as a strike means the Oregon robbery cannot be counted as a strike." ECF No. 53, at 13 n.3.

And finally, the government agrees with Cooper that the Utah burglary mentioned under offense (1) is not relevant for purposes of application of the three-strikes law. Cooper spends several pages introducing "new evidence" that a clerk from Utah's Third Judicial District certified that the court had no record of a burglary conviction against Cooper. But the government moved

---

[6] As discussed above, the residual clause is unconstitutional so the court considers only the applicability of the enumerated clause and the elements clause.

to strike that offense from the Notice prior to the sentencing hearing. Case No. 00-cr-00051-TC, ECF No. 274, at 5 n.1 ("The Information contains a clerical error on page 2. Item No. 1 lists the defendant's 1981 Robbery . . . A reference to a burglary (unrelated to this case) was inadvertently included in this paragraph. The United States requests that this reference to the burglary be stricken."). Thus, the sentencing judge did not take that offense into account when conducting sentencing.

In sum, the government predicates its arguments solely on the grounds that offense (1), offense (4), and the underlying Utah bank robbery conviction support application of the federal three-strikes law. By limiting its arguments to these offenses, the government moots Cooper's arguments related to offenses (2), (3), and (5), as well as the Utah burglary conviction mistakenly listed under offense (1).

## II.    CALIFORNIA ROBBERY AND THE RESIDUAL CLAUSE

The government argues that offense (1), Cooper's California robbery conviction, qualifies as a strike because it constitutes an enumerated offense. Cooper responds that offense (1) does not qualify as a strike under 18 U.S.C. § 2255 for two reasons. First, Cooper contends that offense (1) does not count as a strike because a California robbery conviction does not qualify as an enumerated offense. Specifically, Cooper relies on the categorical approach to argue that the statute under which he was sentenced in California is not a categorical match for the federal robbery statutes cited in 18 U.S.C. § 3559(c)(2)(F)(i). Second, he argues that to the extent the judge considered offense (1) as a strike under the residual clause, the sentence is unconstitutional under *Johnson v. United States*.

As discussed above, both Cooper and the government agree that the residual clause is unconstitutional. Thus, to the extent the sentencing judge relied on the residual clause to find that

offense (1) qualified as a strike, the sentence would result from application of an unconstitutional provision. But if, as the government asserts, the sentencing judge used the enumerated clause to find that offense (1) qualified as a strike, then the sentence is not constitutionally defective. Therefore, the operative question for the court is whether the sentencing judge relied on the residual clause or the enumerated offenses clause in sentencing Cooper.[7]

When a court faces the question of which clause a sentencing judge used to determine that a particular offense qualified as a strike within the meaning of the federal three-strikes law, the Tenth Circuit instructs this court to engage in a two-step process to determine, "*as a matter of historical fact*, whether the sentencing court relied on the residual clause in imposing the [mandatory] sentence." *United States v. Lewis*, 904 F.3d 867, 872 (10th Cir. 2018) (citation omitted). In the first step, the court looks at the sentencing record for evidence of the clause the sentencing judge relied upon in sentencing the movant. *See United States v. Driscoll*, 892 F.3d 1127, 1132 (10th Cir. 2018). If the sentencing record clarifies which clause the sentencing judge used, the court need not continue to the second step. But where the sentencing record is ambiguous, the court "examine[s] the 'relevant background legal environment' at the time of sentencing to determine whether the district court would have needed to rely on the residual clause.'" *Id.* Cooper bears the burden of demonstrating by a preponderance of the evidence that the sentencing court "relied on the residual clause to enhance his sentence." *Driscoll*, 892 F.3d at 1135 & n.5.

### A.   *Sentencing Record*

"To determine whether the sentencing court relied on the residual clause, we examine [first] 'the sentencing record to confirm that there is no mention whatsoever of the residual clause in the

---

[7] The elements clause does not apply here. As discussed in more detail below, because Cooper's California robbery conviction was not punishable by a maximum term of imprisonment of ten years or longer, it did not qualify under the elements clause.

PSR or any of the other sentencing court pleadings or transcripts.'" *United States v. Copeland*, 921 F.3d 1233, 1242 (10th Cir. 2019) (quoting *Driscoll*, 892 F.3d at 1132). In examining the sentencing record, the court looks for "(1) references to the residual clause or another . . . clause, and (2) information about a movant's prior convictions." *Id.* at 1243 (citations omitted). "[E]xpress 'mention' of either the residual, elements, or enumerated clause by the sentencing judge at sentencing, in a court order, in a PSR adopted by the sentencing judge, or in a party's motion may be relevant and even sufficient to show whether the sentencing court relied on the residual clause." *Id.* (citation omitted).

Here, the sentencing transcript contains no reference to either the residual, elements, or enumerated clause. Prior to the sentencing hearing, Cooper objected to the PSR on the grounds that the government had not borne its burden of demonstrating, via fingerprints or DNA, that Cooper was the person named in the documents. Accordingly, the sentencing hearing focused largely on the government's burden and whether Cooper was the individual named in the prior convictions listed in the PSR.

In fact, the sentencing judge never specifically indicated which offenses he relied on as strikes for Cooper. During his colloquy with Cooper's counsel, the sentencing judge referenced certain paragraphs of the PSR that correspond to descriptions of offenses (4) and (5), as well as an offense not listed in the Notice. *See* ECF No. 53-2, at 19 ("Specifically relevant to this particular situation are the paragraphs, I think it's Paragraph 35 and 36, 37 and 38, perhaps others as well . . . ."). And as Cooper accurately points out, there was "not one word about the 2nd degree robbery [i.e., offense (1)] in the entire sentencing transcripts." ECF No. 81, at 17. But the sentencing judge's failure to specifically mention offense (1) does not preclude a finding by this court that the sentencing judge considered it as a strike. This is particularly true in light of the fact

that the government clearly listed offense (1) in the Notice that it provided to the court in advance of sentencing. And the sentencing transcript indicates that the judge did not intend to definitively indicate which prior offenses he relied upon when he listed the relevant paragraph numbers—as evidenced by his inclusion of a paragraph that corresponded to an offense not listed in the Notice. Rather, the court reads the sentencing judge's comment as a spur-of-the-moment reference to potentially relevant paragraphs of the PSR. Indeed, the sentencing judge himself notes that, in addition to the paragraphs mentioned, there were "perhaps others as well" that corresponded to other relevant offenses. ECF No. 53-2, at 19. In sum, the record of the sentencing hearing is ambiguous as to which offenses the sentencing judge considered as strikes. And, most importantly, it makes no explicit or implicit reference to which specific clause the sentencing judge used to determine that the relevant offenses were strikes.

Cooper's PSR is similarly unhelpful. The PSR contains a few references to the federal three-strikes law. It states that "[t]he maximum term of imprisonment for this offense, a Class A Felony, is Life, pursuant to 18 U.S.C. § 3559(c)." PSR ¶ 54. And it references the government's notice to the defendant that he is subject to a three-strikes sentence enhancement. *Id.* ¶ 4. But, again, it contains no mention of the offenses on which the sentencing judge relied, nor does it shed any light upon which clause the judge used to determine that the relevant offenses constituted strikes. Finally, the briefing provided to the sentencing judge in advance of the sentencing hearing, which primarily focuses on Cooper's objections related to the lack of DNA or fingerprint evidence tying him to the offenses listed in the Notice, is similarly devoid of information about which offenses or clause the court used to sentence Cooper to mandatory life imprisonment.

The ambiguity in the sentencing record "favors neither [the petitioner] nor the government." *Driscoll*, 892 F.3d at 1135. Instead, "[w]hen . . . we are presented with an ambiguous sentencing

record," the court looks to the relevant background legal environment when the sentencing judge imposed the mandatory life sentence "to show the most likely reasoning of the sentencing court." *See Copeland*, 921 F.3d at 1246 (citation omitted).

### B. *Background Legal Environment*

"[W]e examine the relevant background legal environment at the time of sentencing 'to determine whether the district court would have needed to rely on the residual clause.'" *Copeland*, 921 F.3d at 1243-44 (quoting *Driscoll*, 892 F.3d at 1132). "[T]he relevant background legal environment is, so to speak, a 'snapshot' of what the controlling law was at the time of sentencing and does not take into account post-sentencing decisions that may have clarified or corrected pre-sentencing decisions." *United States v. Snyder*, 871 F.3d 1122, 1129 (10th Cir. 2017). "If the court's only option was the residual clause under the background law because it could not have relied on the enumerated or elements clause, we conclude that the sentencing court must have relied on the residual clause." *Copeland*, 921 F.3d at 1243 (citation omitted). "[F]acts about the movant's previous convictions contained in the PSR, sentencing hearing, or other parts of the district court docket, when viewed in light of background law, can often enable a court to determine whether the district court relied on the residual clause in sentencing." *Id.*

Here, the following factors indicate that the sentencing judge relied on the enumerated clause, not the residual clause, in determining that offense (1) qualified as a strike. First, at the time of the sentencing hearing, courts generally considered robbery a serious violent felony for purposes of the enumerated clause. Second, Cooper's California robbery did not qualify for any exception to that rule in light of the facts of his case, which a 2003 court would have considered. Third, a plain reading of the residual clause would have precluded its use by the sentencing judge. The court addresses each factor in turn.

Considering the legal environment as it existed in 2003, Cooper's California robbery qualified as a strike under the enumerated clause. Cooper accurately notes that there are "no specific on-point cases . . . that have found that CPC § 211 qualifies, or does not qualify, under § 3559(c)'s enumerated offenses clause." ECF No. 81, at 18. But the law does not require a case directly on point. Rather, the court looks to the landscape of caselaw at the time of Cooper's sentencing hearing. And caselaw clearly establishes that, at the time of Cooper's sentencing, the Tenth Circuit generally considered robbery a serious violent felony for purposes of the three strikes sentencing enhancement. *See United States v. Gottlieb*, 140 F.3d 865, 866 (10th Cir. 1998) ("Robbery is generally considered a 'serious violent felony' for purposes of the Three Strikes statute."); *United States v. Mackovich*, 209 F.3d 1227, 1238 (10th Cir. 2000) (same); *United States v. Fortune*, 216 F.3d 1088, at *7 (10th Cir. 2000) (unpublished table decision) (same).

However, caselaw at the time of Cooper's sentencing also acknowledged an exception to the general rule. Specifically, the nonqualifying felony clause of § 3559 states that "§ 3559 treats robbery as a non-qualifying felony if the defendant establishes by clear and convincing evidence that – (i) no firearm or other dangerous weapon was used in the offense and no threat of use of a firearm or other dangerous weapon was involved in the offense; and (ii) the offense did not result in death or serious bodily injury . . . to any person." *United States v. Smith*, 208 F.3d 1187, 1188-89 (10th Cir. 2000). But that exception does not apply here.

In order to determine whether an enumerated offense qualified for an exception under § 3559(c)(3)(A), the 2003 sentencing court would have examined the facts underlying the conviction. Cooper's PSR describes the California robbery as follows:

> When they arrived in Santa Cruz, they broke into the home of a 62-year-old victim. When the victim arrived home, they made him lie down and they tied him up with a cord from an iron. The defendant, who was holding a hunting knife, made the statement "Let's kill him." The codefendant apparently talked the defendant out of

18

> murdering the victim and, during the Court proceedings, the victim testified that, in
> his opinion, the codefendant saved his life.

PSR ¶ 27. Based on this account, which Cooper did not contest at the time of sentencing,[8] Cooper undoubtedly threatened to use a dangerous weapon (a hunting knife) during his commission of the robbery. Such "threat of use of a firearm or dangerous weapon" would have prevented the sentencing judge from treating the offense as a non-qualifying felony. *See* 18 U.S.C. § 3559(c)(3)(A).

Nevertheless, Cooper contends that the court cannot look to the specific facts of the California robbery but must instead use the categorical approach to compare California Penal Code § 211 to the enumerated federal robbery statutes. Accordingly, Cooper spends several pages demonstrating that California Penal Code § 211 does not qualify as an enumerated offense under the categorical approach. But, as the government points out, the Tenth Circuit did not expressly adopt the categorical approach to the federal three-strikes context until 2018. *See* ECF No. 53, at 19 n. 4 (citing *United States v. Leaverton*, 895 F.3d 1251, 1253 (10th Cir. 2019)). And caselaw from the time of Cooper's conviction indicates that the sentencing judge would not have applied the categorical approach to determine whether Cooper's offense qualified for an exception to the enumerated offense clause. In 2000, the Tenth Circuit stated that that "*Taylor*'s categorical approach is inapplicable to the 'nonqualification' inquiry under § 3559(c)(3)(A)." *Mackovich*, 209 F.3d at 1240. The Tenth Circuit affirmed this position several months after the court sentenced Cooper, reiterating that "the *Taylor* categorical approach is inapplicable to a district court's determination of whether an offense qualifies as a 'strike' under the federal 'three-strikes' law."

---

[8] *See* PSR Addendum, at 1 ("As of January 13, 2003, defense counsel Edwin Wall had not advised the probation officer that he had any objections to the presentence report); ECF No. 53-2, at 12 ("[Defendant] submits to the Court there are no corrections or additions which the defendant wishes to make to the presentence investigation.").

*United States v. Martinez-Candejas*, 347 F.3d 853, 859 (10th Cir. 2003). The language of the statute, the Tenth Circuit reasoned, "unmistakably requires the courts to look to the specific facts underlying the prior offense." *Id.* Accordingly, a sentencing judge in 2003 would have looked to the specific facts of Cooper's offense to determine whether the nonqualification clause applied to his offense. As discussed above, the specific facts of his offense clearly demonstrate that Cooper cannot avail himself of the nonqualification clause to avoid a finding that offense (1) falls under the enumerated clause.

And finally, even a cursory examination of the residual clause by the sentencing judge would have eliminated use of the residual clause from consideration. The residual clause covers "any offense punishable by a maximum term of imprisonment of 10 years or more . . . that, by its nature, involves a substantial risk that physical force against the person of another may be used in the course of committing the offense." 18 U.S.C. § 3559(c)(2)(F)(ii). Thus, the residual clause plainly requires that the sentencing judge find the relevant offense punishable by at least ten years. But California Penal Code § 213 provided that first-degree robbery is punishable either by "three, six, or nine years" or "three, four, or six years" depending on the circumstances, and second-degree robbery is punishable by "two, three or five years."[9] Thus, in 2003 (as now) the longest sentence for any degree of robbery under California Penal Code § 211 was nine years. Accordingly, the sentencing judge could not have used the residual clause with regard to offense (1) because the California robbery conviction did not meet the threshold requirement that the offense be punishable by a maximum term of ten years or more.

---

[9] Cooper refers to his conviction as second-degree robbery. But, as the government notes, the record contains no evidence indicating the degree of Cooper's robbery conviction. Given that the maximum term of imprisonment for either first- or second-degree robbery falls under ten years, the court need not further investigate the distinction.

In sum, a review of the relevant background legal environment at the time of Cooper's sentencing supports a finding that the sentencing judge relied on the enumerated clause—not the residual clause—to determine that offense (1), the California robbery, qualified as a serious violent felony. Because this court finds that the sentencing judge relied on the enumerated clause, not the residual clause, Cooper has failed to sustain his burden of establishing a deprivation of his constitutional rights. And because the court determines that, as a matter of historical fact, the sentencing court did not rely on the residual clause, it need not reach Cooper's harmless error arguments.

## III.   NOTICE ERRORS

Finally, Cooper includes a number of arguments objecting to various alleged errors in the Notice. For instance, he objects to the order in which several of the offenses are listed, the dates associated with several offenses, and the indication that offense (4) is an armed robbery. These alleged errors do not alter the court's conclusion.[10]

First, Cooper did not object to any of these issues at the time of sentencing, despite having ample opportunity. Indeed, his only objection was that the government had not sufficiently established that he was the person named in the convictions.

Second, most of Cooper's objections to the Notice have no grounding in law. Cooper highlights ten errors. ECF No. 46-1, at 15-16. Several of the errors complain that the government listed the offenses in the wrong order. But there is no legal authority requiring the government to list the predicate offenses in any particular order in the Notice. Other objections assert that the

---

[10] The court sympathizes with Cooper's complaint that the government inappropriately included several of the offenses in the § 3559 Notice. These offenses, which the government now concedes do not qualify as strikes, made Cooper's potential strikes appear numerous. Nevertheless, erroneously including superfluous offenses in the Notice, when the Notice already includes sufficient strikes under the federal three-strikes law, is not grounds for revisiting Cooper's sentence.

government listed the incorrect date for some offenses. But the government included the conviction records as an attachment to the Notice, meaning it clearly put Cooper on notice of which offenses it intended to use despite clerical errors in the dates listed. *See United States v. Hood*, 615 F.3d 1293, 1304 (10th Cir. 2010) ("Because [the movant] had sufficient notice of the prior conviction upon which the government sought enhancement as well as an opportunity to be heard, the Enhancement Information's incorrect identification of the court and place of conviction would be at most harmless error."). Similarly, Cooper's complaint that offense (4) was listed as an armed bank robbery, when in fact it was unarmed, was apparent from the conviction records attached.

Third, Cooper objects to use of the Utah burglary listed under offense (1). But as discussed above, the government had already moved to strike this offense from the list by the time the sentencing hearing occurred.

And finally, the government concedes that the errors Cooper identifies as "error #9" and "error #10" are correct but argues that they have no relevance to this petition. The court agrees. Error #9 accuses the government of giving the court the false impression that the two bank robberies listed under offense (4) may count as two individual predicate offenses. But as discussed above, the government does not attempt to count the two offenses listed in offense (4) as separate strikes here. Error #10 points out that Cooper committed offense (5) prior to his conviction for offense (4). But again, the government does not attempt to rely on offense (5) as a strike. Indeed, it acknowledges that offense (5) cannot qualify as a strike because Cooper committed it before the conviction for offense (4). In sum, Cooper's identified errors do not alter the court's conclusion that offense (1), offense (4), and the underlying Utah bank robbery conviction add up to three valid strikes against Cooper.

**CONCLUSION**

The court DENIES Cooper's Motions to Vacate, Correct, or Set Aside his sentence under 28 U.S.C. § 2255.

DATED March 29, 2023.

BY THE COURT

Jill N. Parrish
United States District Court Judge